Dkake, Ch. J.,
delivered the opinion of the court:
This case was transmitted to this court by the Secretary of the Interior, under section 2 of the Act March 3,1883 (22 Stat. L., 185, ch. 116), commonly spoken of as “the Bowman Act,” which section is as follows:
“Sec. 2. That when a claim or matter is pending in any of the executive departments which may involve controverted questions of fact or law, the head of such department may transmit the same, with the vouchers, papers, proofs, and documents pertaining thereto, to said court, and the same shall *134 be there proceeded in under such rules as the court may adopt. When the facts and conclusions of law shall have been found, the court shall not enter judgment thereon, but shall report its findings and opinions to the department by which it was transmitted for its guidance and action.”
The letter of the Secretary transmitting the case states that he sends “the papers, proofs, and documents pertaining to * «* * certain alleged wrongful payments made from the trust fund of the orphan and incompetent Ohickasaws, the adjustment of which is provided for in Article 4 of the treaty of June 22, 1852 (10 Stat., 974-76).”
Among the “papers, proofs, and documents” are twenty-two affidavits, sworn to before Martin W. Chollar, Indian agent; and the answers of one Charles Johnson to certain interrogatories, also sworn to before said Chollar; and the answers of said Johnson to certain other interrogatories, sworn to before a justice of the peace.
The Attorney-General, on behalf of the government, moves to strike from the record those affidavits and statements, as incompetent and inadmissible as evidence in the cause. To reach a satisfactory conclusion in regard to this motion we have felt obliged to look beyond the face of those affidavits and statements, and to acquaint ourselves somewhat with the nature and history of the matters involved in the case, so far as the printed record would enable us to do.
All those affidavits, and the sworn statements of Johnson, relate to one of the three causes of action set forth in the petition of the Chickasaw Nation, namely, that for the restoration to that Nation of certain moneys held in trust by the United States for the benefit-of orphan and incompetent Ohickasaws; which moneys are alleged to have been wrongfully paid out to persons having no right to receive the same. That the Chickasaw Nation could set up such a claim is owing to the aforesaid treaty between the United States and that Nation, in the fourth article of which is found this paragraph:
“It is also alleged by the Ohickasaws that there are numerous cases in which moneys held in trust by the United States for the benefit of orphan and incompetent Ohickasaws have been wrongfully paid out to persons having no right to receive the same. It is therefore further agreed that all such cases shall be investigated by the agent of the United States, under the direction of the Secretary of the Interior; and if it shall appear *135 to the satisfaction of said Secretary that any of the orphans and incompetents have been defrauded by such wrongful payment, the amount thus misapplied shall be accounted for by the United States as if no such payment had been made.”
■ July 31, 1868, the Secretary of the Interior, in execution of this clause of the treaty, instructed the Commissioner of Indian Affairs as follows:
“It is alleged by the Chickasaws that there are numerous cases in which moneys, held in trust by the United States for the benefit of orphan and incompetent Chickasaws, have beeu wrongfully paid out to persons having no right to receive the same. You will instruct the United States agent for the Chickasaws to make careful examination and investigation of all such cases as may be brought to his knowledge, and report the facts in each case to your bureau.
“ The agent will, in his report, state in reference to each case the name of the person to whom the money alleged to have been wrongfully paid was due, the amount thereof, and to whom, and when, and by whom paid, and by what authority such payment was so made, together with such other facts as he may deem necessary to a full understanding of the case, with his opinion thereon.
“ Upon receipt of such report you will transmit it to this department for consideration and action
In obedience to these instructions the Commissioner of Indian Affairs, August 18, 1868, wrote to Martin W. Chollar, United States Indian agent, calling his attention to the said second paragraph of the fourth article of said treaty, and saying as follows: .
“The Hon. Sec’y of the Interior, by letter to this office of the 31st ult., directs me to instruct you, and you are hereby instructed, to make careful examination and investigation of all such cases of alleged wrongful payments referred to in the above paragraph of the fourth article of the treaty of 1852, as may be brought to your knowledge, and report the facts in each case to this office.
“You will, in your report, state in reference to each case the name of the person to whom the money alleged to have been wrongfully paid was due, the amount thereof, to whom, when, and by whom paid, and by what authority such payment was so made, together with such other facts as you may deem necessary to a full understanding of the case, with your opinion thereon.”
Indian Agent Chollar proceeded to make the examination and investigation there commanded; in the course of which he took .the twenty-two affidavits and the answers of Charles John *136 son aforesaid; all of which he returned to the Department of the Interior in connection with the report he made in the premises on the 1st of April, 1869; and the Secretary of the Interior transmits them to this court as a part of the “papers, proofs, and documents” relating to and connected with the matters which he sends to us for our consideration and action.
The case, as thus stated, is unlike any other that has ever come to this court from a department, or indeed from any quarter; and the question involved in this motion has never come up here before, and most probably the like of it may never appear here again.
Under section 7 of the Aet June 25, 1865 (15 Stat L., 75), which afterwards became in substance section 1063 of the Revised Statutes, a good many cases have been sent here by heads of departments, with “all the vouchers, papers, proofs, and documents pertaining thereto”; among which would usually be found ex parte affidavits, sent in by the claimant in support of his claim; such evidence being received in all the departments. But every such case comes to this court under the law which prescribes that it shall be here “proceeded in as if originally commenced by the voluntary action of the claimant.” In any case so commenced no ex parte affidavits have ever been received as evidence in favor of a claim; and therefore when suen affidavits have come from a department as a part of the “ papers, proofs, and documents” appertaining to the case, they have not been regarded by this court as evidence which the claimant could use on the trial; for they were got up by himself alone, without the knowledge of any officer of the government, and such officers could very rarely have any knowledge of the affiants, and could never have an opportunity to cross-question them.
It was, doubtless, because of the well-settled practice of this court to rule out such affidavits, when offered in evidence by the claimant, that the present motion was made. Is that motion properly applicable in the present case ? We think not.
These affidavits, though ex parte in the sense of having oeen made without any cross-examination by any representative of the government, are clearly distinguishable from the ordinary ex parte affidavits filed by claimants in a department, in this, that while of the latter the government knows nothing whatever till they are so filed, the former have been taken by an *137 officer of the government charged with the duty of making an investigation, and returned by him into the department ordering the investigation; which investigation was called for by a treaty, and instituted in pursuance thereof. We do not overlook the fact that the instructions under which the officer made the investigation said nothing about his taking affidavits; but, in our judgment, that fact alone ought not to stamp them with invalidity, so far as to require us now to strike them from the record.
We, however, desire it understood, that in declining to put them out of the case in this summary way, we mean not the least intimation of any opinion as to their value as evidence, or as to the disposition to be made of them, or the effect to be given to them, when we come to the trial of the case. It may then possibly appear that they are of no value whatever. Of that we say nothing now. We simply deal with the motion in its demand to strike these affidavits, &c., from the record. Under the peculiar circumstances to which we have adverted, we do not see our way clear to do that, and the motion is therefore overruled.